UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ISHMAEL CLARK-WILLIAMS :

Plaintiff :

v. : Case No. 1:14-CV-00099-JEB

WASHINGTON METROPOLITAN AREA :
TRANSIT AUTHORITY, ("WMATA") :
600 Fifth Street NW :
Washington, DC 20001, and :
:
AMALGAMATED TRANSIT UNION LOCAL 689
("LOCAL 689") :
2701 Whitney Place :
Forestville, MD 20747, and :
:
Mr. Anthony Garland :
c/o Local 689 :
:

Defendants :

…………………………………………………………:

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN
OPPOSITION TO DEFENDANT LOCAL 689'S MOTION TO DISMISS

Plaintiff Ishmael Clark-Williams, by undersigned counsel, hereby opposes Defendant Local 689's Motion to Dismiss, under FRCP 12(b)(6), which should be denied for the following reasons:

## FACTS

The facts are as stated in Defendant's statement of facts, except that Defendant's characterization of the Complaint is inaccurate. The Complaint and its factual allegations must be taken as true at this stage, and speak for themselves.

ARGUMENT

1. Plaintiff's Complaint meets the FRCP 12(b)(6) standard for stating a claim upon which relief can be granted. Bell Atlantic Corp v. Twombly, 550 US 554, 127 S.Ct. 1955 (2007), and Ashcroft v. Iqbal, 556 US 662, 129 S.Ct. 1937 (2009), provide that to survive a motion to dismiss the complaint need only contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" and the complaint's factual statements must be accepted by the court as true.
2. Unlike the Complaint itself, Defendant's Motion focuses almost exclusively on the narrow facts and arguments relating to the processing of Plaintiff's grievance. However, the Complaint also pleads facts and claims regarding Defendant's negotiation process relating to WMATA's initiation and application generally against scores of employees since 2011 of its Policy P/I 7.40/0 ("Policy"), the application of which also caused (along with Mr. Garland's and the Union's misadvising Plaintiff in entering into the Grievance Settlement) Plaintiff's employment to be terminated in 2013. The Complaint at paragraphs 14 – 20 plead specific facts, including that Local 689 does not oppose WMATA's Policy in its relationship with WMATA, which Policy continues to allow WMATA to retroactively apply that Policy to terminate employees having certain criminal violations in their record, which violations were fully disclosed to WMATA when they were hired and were accepted by WMATA when they were hired, under its former policy prior to its change in 2011.
3. The Supreme Court has repeated ruled that its Vaca three-prong standard for testing Union conduct for a violation of "fair representation" ("arbitrary, discriminatory, or in bad faith" in Vaca v. Sipes, 386 US 171, 178 (1967) "applies to *all levels* of a union's

representation, from *contract negotiations* to enforcement and grievance proceedings" Air Line Pilots Ass'n Int'l v. O'Neill, 449 US 65, 77-8 (1991) (emphasis added), and Comm'n Workers v. Beck, 487 US 735 (1988).

4. Certainly, the Vaca test is applicable to the Union's entire course of conduct since at least 2011 in dealing with WMATA's Policy.

5. In its Motion, Local 689 lamely, and erroneously at this stage in the litigation, tries to provide rebuttal evidence to Plaintiff's fact allegations in the form of the Clark-Williams Arbitration Award. At this stage, the Complaint's fact statement that Local 689 "does not oppose WMATA's Policy" is a question of fact and must be deemed true. It is inappropriate for Defendant to introduce rebuttal evidence on a fact issue and argue that the Court can and should disregard the truth of the facts as plead.

6. In any event, that Award does not support the conclusion Local 689 wants to have drawn: it is in the "Statement of Union Position" that the Board notes that the Union "points to evidence in the record," not otherwise identified, that the Union "notified [WAMATA] that such a [Policy] was unacceptable and had the potential of discriminating against employees." Award, page 14. However, WMATA took the position that "the Board does not have the authority to determine whether it agrees with the [Policy]." Award, page 12. The Board evidently agreed with that position, since Local 689 signed the Grievance Settlement document which applied the Policy to Plaintiff and the Board does not even mention that issue in the Board's "Findings." Award, page 12 & 15-18. Accordingly, there is no Board "Finding" to support Local 689's position herein that Local 689 opposes WMATA's Policy.

7. However, the Award does provide evidence to the contrary: that Local 689 believed no later than 2011 that the Policy at least "had the potential" of discrimination, which if vindicated would violate the Vaca test for "fair representation."

8. Beyond potentially discriminatory, an employer's policy to currently subject its employees to a background check having immediate termination as a sanction, which is more stringent than the background check previously used in hiring, has an *ex post facto* flavor which immediately violates universal notions of fair play and justice. Accordingly, the Federal Courts should give rigorous scrutiny to the issue of whether a union's opposition is sufficient robust to overcome a conclusion that it has been merely "perfunctory" and "without rationality" in its opposition in a course which can be concluded to be "arbitrary" and thus violate the Vaca standard.

9. Facts pled in the Complaint and the Board Award beg questions to be explored in discovery: how has Local 689 *effectively* oppose or dealt with the Policy since at least 2011; what actions has Local 689 taken to prove that the Policy is discriminatory or arbitrary; what actions has Local 689 taken to ameliorate the pernicious effect of the Policy on its employees, and other similar issues. Since the Union admits that it believed in 2001 that WMATA's Policy could be discriminatory, what had the Union done to try to vindicate that belief by the time of Plaintiff's arbitration in 2013, and what has the Union done to date to do so, both by testing the discriminatory impact of WMATA's Policy on its employee population, and by the testing for discrimination by similar policies by other employers?

10. While there is some deference by Federal Courts to union conduct and process in determining whether a union has violated its duty of "fair representation," decisions of

the Federal Courts confirm that a breach of "fair representation" occurs where the union is merely negligent, fails to act without reason, or even fails to assert employees' rights pursued for reasons which are benignly motivated but arbitrary. Ruzicka v. GM Corp., 523 F.2d 306 (1975); Foust v. Int'l Broth. Of Elec. Workers, 572 F.2d 710 (1978); Ruggirello v. Ford Motor Co., 411 F.Supp.758 (1976). The Supreme Court decided in Vaca that a union breaches its duty when it "arbitrarily ignore[s] [employee's rights] or process[es] [them] in [a] perfunctory fashion." 386 US at 190,191. Allegations in the Complaint, taken as true, support such a conclusion in judging Local 689's dealing with WMATA's Policy since at least 2011.

11. Specific to Plaintiff's grievance, Defendant's Motion also ignores its conduct, beyond the arbitration itself, during its pursuit of Plaintiff's grievance, particularly the Grievance Settlement Agreement consideration, signing, and pursuit. Complaint paragraph 10 pleads that Local 689 (through Mr. Garland) erroneously advised Plaintiff, before the Grievance Settlement document was signed, that his disclosed, past violations would not preclude his being reinstated under the Settlement Agreement. That error caused the Union to enter into the Grievance Settlement without objecting to, and negotiating the removal of, a condition (i.e. a current background check) which could not possibly be met and doomed satisfaction of the Grievance Settlement and Plaintiff's reinstatement. In effect, Mr. Garland advised Plaintiff that what Mr. Garland and the Union believed was a "Get Out of Jail – Free" card was in fact a "suicide note" for his reinstatement.

12. Those errors support the Court's concluding that thereby Local 689 handled Plaintiff's grievance in a "perfunctory," "grossly negligent," or "arbitrary" fashion, in violation of the Vaca standard for fair representation. The Union's conduct in connection with the

Grievance Settlement violates "fair representation" under the case law cited above in paragraph 10.

13. Union Officer Garland: Local 689 asserts an unconditional and blanket immunity of a Union Officer acting in in his official duty. No such blanket immunity exists. In Atkinson v. Sinclair Refining Co., 370 US 238 (1962), the Supreme Court limited its decision: "we hold that when a union is liable for damages *for violation of the no-strike clause*, its officers and members are not liable for these damages." 370 US at 249 (emphasis added). In Sullivan v. Potter, 2006 WL 785289 (2006), cited with approval by Local 689, the only claim against individual union officers was a claim for breach of the duty of fair representation, which claim was also pursued against the union also. That is not the case here. Plaintiff's claim against Mr. Garland is grounded in his duty to "deal with Plaintiff in good faith and with fundamental fairness," to which duty Mr. Garland and Local 689 admit in their Answer. Answer and Complaint, paragraph 18.

14. Accordingly, the limited immunity afforded by the cited precedents in Defendant's Motion does not require or support dismissal of Plaintiff's claims against Mr. Garland.

15. Defendant's Motion admits Plaintiff's claim that Mr. Garland gave him erroneous advice about the Grievance Settlement document. Defendant's Motion states: "Mr. Garland advised the Plaintiff about the *long standing practice* that an arrest *which is disclosed at the time of hire will not be used as grounds for discharge at a later time.* WMATA ***had*** recently instituted a policy ***to change*** the practice…" (emphasis added).

16. In the event that the Court should grant Defendant's Motion to Dismiss, Plaintiff moves that the Court grant time for him to amend his Complaint to remediate whatever grounds

on which the Motion is granted. In this regard, Plaintiff notes that at the bottom of page 8 of its Motion, Local 689 asks that the Complaint be "dismissed without prejudice."

17. There is no basis for the award of attorney's fees to Defendant.

For the foregoing reasons, Defendant's Motion should be denied.

Respectfully submitted,

/s/ John E. Williams

John E. Williams, Esq.
Counsel to Plaintiff
3213 Duke Street, Suite 601
Alexandria, Virginia 22314
DC Bar #201442
Tele: 703 838-2939
Fax: 703 548-6173

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ISHMAEL CLARK-WILLIAMS :

Plaintiff :

v. : Case No. 1:14-CV-00099-JEB

WASHINGTON METROPOLITAN AREA :
TRANSIT AUTHORITY, ("WMATA") :
600 Fifth Street NW :
Washington, DC 20001, and :
:
AMALGAMATED TRANSIT UNION LOCAL 689
("LOCAL 689") :
2701 Whitney Place :
Forestville, MD 20747, and :
:
Mr. Anthony Garland :
c/o Local 689 :
:

Defendants :

……………………………………………………….:

ORDER

Upon consideration of arguments by the parties on Defendant Local 689's Motion to Dismiss, it is

ORDERED that such Motion is hereby denied.

______________________________________
Honorable James E. Boasberg,
Judge, U S District Court
for the District of Columbia