# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| ISHMAEL CLARK-WILLIAMS,<br><br>    Plaintiff,<br><br>        v.<br><br>LOCAL 689, AMALGAMATED<br>TRANSIT UNION, *et al.*,<br><br>    Defendants. | Civil Action No. 14-99 (JEB) |

## MEMORANDUM OPINION

Plaintiff Ishmael Clark-Williams worked for the Washington Metropolitan Area Transit Authority as a bus driver from 2007 to 2011, when he was terminated – but not for anything he had done while employed there. Instead, WMATA determined that pre-2007 New Jersey felony convictions disqualified Clark-Williams from keeping his job. His union – Amalgamated Transit Union, Local 689 – filed a grievance on his behalf and ultimately took the matter to arbitration, which upheld Plaintiff's dismissal. Unhappy with that result, Clark-Williams brought this action against WMATA, Local 689, and one of its officers, Anthony Garland, asserting a breach of the duty of fair representation.

Although WMATA answered the Complaint, Local 689 and Garland have now filed a Motion to Dismiss, asserting that the Union did all it could for Plaintiff. The Court agrees that Garland should be dismissed, and it will, in addition, grant the Union's Motion in part and deny it in part.

1

**I.     Background**

For purposes of this Motion, the Court takes the facts as pled in the Complaint as true. On September 7, 2007, Plaintiff was hired by WMATA as a bus operator. See Compl., ¶ 4. Prior to his hiring, he informed WMATA that he had previously pled guilty to criminal charges in New Jersey and was at the time on probation there. Id., ¶ 5. After working for WMATA for three and a half years, Clark-Williams was fired on February 4, 2011, for "violations of Sections 1.1, 1.2, & 1.3 of the WMATA Employee Handbook." Id., ¶ 7. (The Complaint does not explain what those sections proscribe.) That same day, Plaintiff filed a grievance, which was initially unsuccessful. Id., ¶ 8. Over a year later, however, WMATA and Local 689 agreed to settle the grievance by reinstating Plaintiff, subject to the condition that he undergo and pass background screening. Id., ¶ 9. Defendant Anthony Garland, "then Recording Secretary, Shop Steward, and Assistant Business Agent, for Local 689," discussed the issues with Plaintiff and advised him that his criminal convictions would not prevent his reinstatement. Id., ¶ 10.

Such assurances notwithstanding, WMATA notified Clark-Williams in July 2012 that he was not eligible for reinstatement because his convictions constituted a permanent disqualifier. Id., ¶ 11. Plaintiff filed a further grievance, which then proceeded to arbitration and resulted in a denial of reinstatement in June 2013. Id., ¶¶ 13-14. Clark-Williams then brought this action against Local 689, Garland, and WMATA. He claims that the Union did not "oppose WMATA's Policy P/I 7.40/0 in its collective bargaining." Id., ¶ 16. (The Policy is never explained, but presumably refers to disqualifying criminal histories.) He also alleges that Local 689 violated both its statutory duties under the National Labor Relations Act to represent him fairly and its contractual duties under the collective-bargaining agreement to treat him in the same manner. Id., ¶¶ 17-18. WMATA is alleged to have breached its duties to deal with

Plaintiff in good faith by applying its policy that resulted in his not being rehired. Id., ¶¶ 23-24. Finally, Garland himself is alleged to have made false or misleading statements to Plaintiff, which ostensibly violated WMATA's Employee Handbook. Id., ¶¶ 27-28.

The Union and Garland have now filed a Motion to Dismiss.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant Plaintiffs 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and plaintiffs must thus be given every favorable inference that may be drawn from their allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiffs must put forth "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S.

3

265, 286 (1986) (internal quotation marks omitted)). Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 556.

In ruling upon a motion to dismiss, a court may consider "the facts alleged in the Complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). The Court here, therefore, may rely on the Board of Arbitration's Opinion, which Local 689 has attached to its Motion as Exhibit A, without converting the motion to dismiss into one for summary judgment. This is because Plaintiff incorporates it by reference into his Complaint. See Compl., ¶¶ 14-15; see also Fennell v. AARP, 770 F. Supp. 2d 118, 124 n.3 (D.D.C. 2011) (when presented with motion to dismiss, court may consider "any documents attached to [the non-movant's pleadings] or incorporated by reference") (internal quotation marks and citation omitted); Felder v. Johanns, 595 F. Supp. 2d 46, 58 (D.D.C. 2009) ("The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.") (citations omitted).

### III. Analysis

In filing their Motion to Dismiss, the Union and Garland make separate arguments, which the Court will address in turn.

#### A. The Union

The NLRA, which authorizes unions to engage in collective bargaining on behalf of their members, imposes a corresponding duty of fair representation upon them. See Vaca v. Sipes,

4

386 U.S. 171, 177 (1967); Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953). That duty requires each union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca, 386 U.S. at 177. A union breaches its duty of fair representation "when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190; see also Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999).

The Supreme Court has cautioned, however, that "Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991). For that reason, "[a]ny substantive examination of a union's performance . . . must be highly deferential." Id. A union's actions are considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Id. at 67 (quoting Ford Motor Co., 345 U.S. at 338). Finally, plaintiffs must meet a "demanding standard" to establish that a union acted in bad faith, which "requires a showing of fraud, or deceitful or dishonest action." Int'l Union of Electronic, Elec. Salaried, Mach. & Furniture Workers, AFL-CIO v. NLRB, 41 F.3d 1532, 1537 (D.C. Cir. 1994) (internal quotation marks omitted).

In his Complaint, Clark-Williams raises two distinct issues in his sole count against the Union. He first alleges that Local 689 should have opposed WMATA's inclusion of Policy P/I 7.40/0 in the collective-bargaining agreement. See Compl., ¶ 16. Second, he asserts that the Union did not deal with him fairly and in good faith in relation to his grievance. See id., ¶¶ 17-

5

19.  Local 689 rejoins that Plaintiff has not cleared the high bar required to establish union liability.

As to the first issue, the Court is at sea without a paddle since neither side bothers to explain what the Policy actually says.  It apparently concerns background screening, but that is all that the Complaint makes manifest.  See id., ¶ 9.  Similarly, Defendant, in moving to dismiss, apparently skips over this allegation, never arguing that the Policy is an appropriate component of an agreement between WMATA and Local 689.  Although Plaintiff's claim here may well be thin, the Court cannot dismiss it at this stage without an actual argument from Defendant and without seeing the language of the Policy.

Instead of discussing the Policy question, the Union focuses its fire on Plaintiff's bad-faith claim.  Although Clark-Williams does not clearly spell this out, there seem to be two strands to this allegation: (1) that the Union misled him into signing the settlement agreement; and (2) it did not adequately represent him in the arbitration of his grievance.

The Union, once again, does not really respond to the former point.  To the extent Plaintiff is arguing that Local 689 (through Garland) made intentional misrepresentations that caused Clark-Williams to sign the agreement, which, in turn, precipitated his defeat at arbitration and prevented his reinstatement, he may have made out a cause of action.  The Court, consequently, will not dismiss such a claim.

The latter theory, conversely, cannot survive because the language of the arbitration decision itself refutes it.  This 20-page decision explains in full the Union's position, which is comprehensive and thorough.  Local 689 first argued that WMATA "violated the Grievance Settlement by refusing to reinstate Grievant after agreeing to do so." Id. at ECF p. 14.  It also asserted that Clark-Williams was not subject to discharge even under Policy 7.40/0 because

existing employees were not subject to actions pertaining to their background. Id. The Union also pointed out that WMATA had not proven what Plaintiff had been convicted of beyond "stealing paper tags on his own new car." Id. at ECF p. 15. It also contended that where WMATA had hired Clark-Williams with knowledge of his crimes, it could not subsequently terminate him without further misdeeds. Id. It concluded that management could not simply "'weed out' workers whom it wished it had never hired in the first place." Id.

The Board, nevertheless, ultimately held: "The issue here is not whether there was sufficient cause to discharge Grievant, but whether the Authority violated the terms of the Grievance Settlement by not reinstating him thereunder." Id. at ECF p. 18. It proceeded to conclude that Plaintiff's "felony convictions for aggravated assault and receiving stolen property . . . prevented him from meeting the standards set forth in Policy 7.40/0"; "[a]s such, he could not satisfy the contingency set forth in Paragraph 1 of the Grievance Settlement and was not entitled to reinstatement thereunder." Id.

While Plaintiff may not like the outcome, he is not appealing that decision. Instead, he is assaying the far more difficult task of showing the Union's representation was deficient. Yet, in so endeavoring, he has proffered no arguments that he wishes Local 689 had made on his behalf or explained what it should have done differently in the arbitration. He is simply claiming that, in a broad sense, the Union did not "prevent the application of [the] Policy to Plaintiff." Compl., ¶ 19. Success, however, is not the standard. As just cited, the authorities require far shabbier conduct: fraud, deceit, irrationality. As Plaintiff has not alleged any such misconduct in connection with the arbitration, the Court must find as a matter of law that the Union did not breach any duty in its representation there.

B. Garland

Although its pleading's title only refers to the Union, Local 689's Motion to Dismiss is also made on behalf of Garland. See Mot. at 2, 9-11. In similarly seeking dismissal, Garland argues that "courts have repeatedly held that Union Officers may not be sued as individuals by the members they represent." Mot. at 9-10. He also notes that the Complaint alleges no duty Garland owed to Plaintiff. Id. at 11.

Garland is correct that Plaintiff may not recover from him individually in addition to the Union itself. See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962) ("The national labor policy requires and we hold that when a union is liable for damages . . . its officers and members are not [individually] liable for these damages."); Price v. Union Local 25, 787 F. Supp. 2d 63, 67 (D.D.C. 2011) (duty-of-fair-representation claims based on defendant's acts as officer of union may not be brought against officer himself); Sullivan v. Potter, 2006 WL 785289, at *2 (D.D.C. 2006) ("As these defendants are individual officers or agents of APWU or the Local Union, a breach of fair representation claim cannot be pursued against them.") (citing Atkinson); Butler v. PEPCO, 2004 WL 4972367, at *9 (D.D.C. 2004) ("Plaintiffs claims against Coleman are based solely on his acts as an officer of the Union representing its membership. Where that is the case, he cannot be held personally liable for alleged violations of a collective bargaining agreement or to third parties for acts performed on the Union's behalf.") (citing Atkinson).

Even if such an action could be brought against Garland individually, he is correct that the duty Plaintiff cites is one owed to WMATA, not Clark-Williams. The Complaint states that the Employee Handbook requires employees to "'make timely, complete and truthful statements at all times. . . . Any employee providing false or misleading information or documentation will

8

be subject to immediate dismissal.'" Compl., ¶ 27. Plaintiff then asserts that this somehow imposes duties upon Garland in his dealings with Clark-Williams. Id. That is simply not correct. To the extent the Handbook may be considered a contract at all, it creates duties between employees and WMATA; it in no way provides Plaintiff a cause of action against fellow-employee Garland.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order that will grant in part and deny in part the Union's Motion to Dismiss and grant Garland's Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 21, 2014

9