# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ISHMAEL CLARK-WILLIAMS,

    *Plaintiff*,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY and
AMALGAMATED TRANSIT UNION
LOCAL 689,

    *Defendants.*

Civil Action No. 14-99 (RDM)

## MEMORANDUM OPINION

Plaintiff Ishmael Clark-Williams lost his job as a bus driver for the Washington Metropolitan Area Transit Authority ("WMATA"). He filed a grievance with his union, Amalgamated Transit Union Local 689 ("Local 689"), which negotiated a Settlement Agreement with WMATA on his behalf. The Settlement Agreement provided that Clark-Williams would be reinstated—but only if he passed a background check under WMATA's new Background Screening Policy. Clark-Williams informed Local 689 that he had an existing criminal record (which he had previously disclosed), but a union official allegedly assured him that it would not pose a problem. It did pose a problem. WMATA determined that Clark-Williams's criminal history rendered him ineligible, and, on that basis, it declined to reinstate him. Local 689 then challenged that finding in arbitration. The Board of Arbitration, however, sided with WMATA, concluding that it had properly applied the Background Screening Policy and had not breached the Settlement Agreement. Clark-Williams was not reinstated.

Clark-Williams then brought this lawsuit against both WMATA and Local 689 (collectively, "Defendants"). He alleges that WMATA breached the terms of its collective bargaining agreement with Local 689 and that Local 689 breached its duty to provide Clark-Williams with fair representation. All three parties have now moved for summary judgment. Because Clark-Williams has failed to identify any factual basis to suggest that WMATA breached the collective bargaining agreement, and because such a breach is an essential element of his claims against both WMATA and Local 689, the Court will grant Defendants' motions, deny Clark-Williams's motion, and enter judgment for Defendants.

## I. BACKGROUND

**A.  The Collective Bargaining Agreement ("CBA") Between Local 689 and WMATA**

Local 689 is a labor union "organized for the purpose of collective bargaining with WMATA." Dkt. 30 at 3. Its relationship with WMATA is governed by a "collective bargaining agreement," or "CBA." The CBA appears to set forth procedures by which WMATA employees can file grievances with Local 689, and through which Local 689 can pursue those grievances on those employees' behalf. *See* Dkt. 30-4 at 3 (CBA table of contents). The full text of the CBA, however, is not before the Court. The parties have provided only the table of contents and the first two pages,[1] *see* Dkt. 30-4 at 3–12; Dkt. 31-1 at 79–81, and those pages contain only a single relevant provision. That provision is CBA section 102(b), and it states in relevant part:

---

[1] The version of the CBA that WMATA submitted expired before the relevant events took place. *See* Dkt. 31-1 at 79. Local 689's submitted version does not list a date at all. *See* Dkt. 30-4 at 2. The versions appear identical, however, and no party has objected that either is incorrect. The Court will assume for purposes of this decision that both versions accurately represent the contents of the operative CBA.

> [Local 689] acknowledges that all matters pertaining to the management of operations, including . . . the hiring and establishment of standards for selection and qualification of employees, . . . and the development and enforcement of reasonable rules and regulations regarding employment are the prerogatives of [WMATA] and are reserved by [WMMATA] unless expressly waived by specific provisions of this agreement, or by the past practices of the parties.

Dkt. 30-4 at 11–12; *accord* Dkt. 31-1 at 81.

**B.     The Settlement Agreement and the Background Screening Policy**

Clark-Williams worked as a bus driver for WMATA starting in September 2007. Dkt. 30 at 3. At the time he was hired, he disclosed that he was on probation, having pleaded guilty to criminal conduct in New Jersey. *Id.* Clark-Williams allegedly served the next three and a half years without incident, "other than minor customer complaints" and "one violation of the anti-violence workplace policy." Dkt. 1-3 at 2 (Compl. ¶ 6). On February 4, 2011, however, WMATA terminated Clark-Williams for "violations of . . . the WMATA Employee Handbook," Dkt. 30 at 4, apparently on the ground that he had allegedly accepted workers' compensation payments to which he was not entitled, *see* Dkt. 34-3 at 4.

Local 689 protested Clark-Williams's discharge on his behalf, and, in May 2012, reached a Settlement Agreement with WMATA. *Id.*; *see* Dkt. 34-4 at 2–4. That Agreement provided that WMATA would reinstate Clark-Williams, subject to certain conditions. Dkt. 30 at 4. One of those conditions was Clark-Williams's successful completion of background screening pursuant to WMATA's Background Screen Policy/Instruction 7.40/0 ("the Background Screening Policy"). *Id.* Specifically, the Settlement Agreement provided that:

> The Grievant [Clark-Williams] will undergo background screening pursuant to P/I 7.40/0, and his/her reinstatement will be contingent upon his/her meeting the standards set forth in this policy and appendices.

Dkt. 34-4 at 2. The Settlement Agreement was signed by a representative from WMATA and by Anthony Garland, the shop steward for Local 689 at the time. *Id.* at 4.

3

The Background Screening Policy (to which the Settlement Agreement referred) had become effective five months earlier on December 22, 2011. Dkt. 34-2 at 2. It provided in relevant part:

**3.00   DEFINITIONS** . . .

3.02   Background Screening is defined as the process for authenticating and verifying the information supplied to [WMATA] and is used to determine eligibility for employment or transfer to another position based on the duties of the position. The components of a screening include: . . .

   (c)   Criminal Convictions. A national search of criminal history. . . .

3.03   Candidate is defined as either external or internal as follows:

   (a)   External Candidate is an external applicant who is under consideration for employment and who has authorized [WMATA] to perform the required screenings. *For the purposes of this policy, returning employees who are under consideration for reinstatement are considered external candidates*. . . .

3.05   Criminal Conviction is defined as a criminal prosecution which concludes in a judgment of guilty, *including a plea of guilty*, no contest, or probation before judgment . . . .

**5.00   PROCEDURES**

5.01   External Candidates

   (a)   External candidates will undergo a screening to determine eligibility for employment based on the requirements of the position in accordance with Section 3.02 of this policy.

   (b)   External candidates, who are returning employees, are required to complete and submit an application for employment and authorize [WMATA] to conduct the required screenings. . . .

   (c)   Any criminal convictions and other relevant negative information will be evaluated to determine eligibility in accordance with *Appendices A–C* to this policy. . . .

4

      5.02    <u>Internal Candidates</u>

           (a)    Internal candidates . . . will undergo a screening prior to selection in accordance with *Appendices A–C* of this policy. . . .

                (3)    Records of arrests and convictions discovered as a result of a screening will be reviewed in accordance with *Appendix D* to this policy.

Dkt. 30-3 at 4–5, 7–8 (emphases added). "Appendix A" to the Policy then explained that felony convictions for "[a]ssault" and "[r]eceiving [s]tolen [g]oods" were "[p]ermanent [d]isqualification[s]" for the position for bus operator. Dkt. 31-1 at 32. Although "Appendix D" further provided that "[c]onviction(s) that were disclosed on the original . . . application for employment . . . will be excluded from further review," Dkt. 31-1 at 34 (emphasis removed), the Policy provided that Appendix D applied only to screenings of *existing* employees, and not to "returning employees" like Clark-Williams, *see infra* Part III.A. The Policy was also prefaced with a "Staff Notice," which stated that "[e]mployees *reinstated* pursuant to . . . a decision by management are . . . considered external candidates and will be screened in accordance with the policy." Dkt. 34-2 at 2 (emphasis added).

    According to Clark-Williams, "[i]mmediately prior to signing the Settlement Agreement," Garland "asked [Clark-Williams] if [he] had disclosed [his New Jersey criminal record] when [he] was hired by WMATA." Dkt. 33 at 10–11 (Clark-Williams Decl. ¶ 2). Clark-Williams says that he informed Garland that he had disclosed his record and that Garland then "advised [him] that such previously disclosed violations would not prevent [his] reinstatement to WMATA employment under the Settlement Agreement." *Id.* Garland, for his part, disputes that such a conversation occurred at that time. *See* Dkt. 34-5 at 2 (Garland Decl. ¶ 5). He says that "the issue only came up" after the Settlement Agreement had already been executed. *Id.*

5

## C.    The Failure to Reinstate Clark-Williams and the Resulting Arbitration

Clark-Williams subsequently failed the background check.  The screening "revealed that on May 13, 2005, [Clark-Williams] was convicted of Aggravated Assault—Serious Bodily Injury and Receiving Stolen Property," Dkt. 35-1 at 2; *see also* Dkt. 31-2 at 1–2 (same), both of which were felonies, Dkt. 31-1 at 12.  As a result, WMATA declined to reinstate him.  Dkt. 30 at 4.  He then filed a grievance protesting that decision, which Local 689 took to arbitration, *id.*, presumably in accordance with the CBA's dispute-resolution procedures.  On June 21, 2013, the Board of Arbitration ruled that WMATA had properly applied the Background Policy and that WMATA accordingly had not violated the Settlement Agreement by failing to reinstate Clark-Williams.  Dkt. 30-2 at 19–20.

## D.    The Current Litigation

Clark-Williams subsequently brought this action in D.C. Superior Court against WMATA and Local 689, as well as against Garland (although the claims against Garland have since been dismissed).  His complaint is brief, and thus the Court will quote in full what it takes to be the key allegations:

> CLAIM 1 AGAINST LOCAL 689 . . .
>
> 10.   Immediately prior to signing the Settlement Agreement for Local 689, Mr. Anthony Garland, . . . discussed the New Jersey Violations with Plaintiff, and Mr. Garland asked if Plaintiff had disclosed those matters when he was hired, and Plaintiff affirmatively answered.  Mr. Garland advised Plaintiff that such previously disclosed violations would not prevent Plaintiff's reinstatement under the Settlement Agreement.
>
> 11.   On about July 31, 2012, WMATA notified the relevant parties that Plaintiff was not eligible for reinstatement because "an offense reported on his record [is] a permanent disqualifier for employment."  That offense is the New Jersey Violations.
>
> 12.   The effect of conditioning that Settlement Agreement on the application of WMATA's Policy P/I 7.40/0 caused Plaintiff not to be reinstate[d] solely because

6

of the New Jersey Violations which had been excused by WMATA when it hired Plaintiff about 5 years previously.

13. Plaintiff filed a grievance which was denied. Local 689 voted that Plaintiff's Grievance be arbitrated.

14. In its Opinion and Award . . . , the Board . . . denied Plaintiff's Grievance.

15. The Board's determinations [were] conclusive on the parties thereto.

16. Local 689 does not oppose WMATA's Policy P/I 7.40/0 in its collective bargaining with WMATA pursuant to the CBA.

17. Local 689 has statutory duties to Plaintiff under the National Labor Relations Act to represent him fairly both in its collective bargaining with WMATA and enforcement of the CBA.

18. In the CBA, both WMATA and Local 689 have contractual duties to deal with Plaintiff in good faith and with fundamental fairness.

19. Local 689 violated such duties by its failure to oppose WMATA's Policy P/I 7.40/0 generally and with respect to Plaintiff's General Grievance and its processing, and by its failure to oppose and prevent the application of such Policy against Plaintiff. . . .

CLAIM 2 AGAINST WMATA . . .

22. In its employment contract with Plaintiff, WMATA has duties to deal in good faith and provide fundamental fairness toward Plaintiff.

23. In the CBA, both WMATA and Local 689 have duties to deal with Plaintiff in good faith and with fundamental fairness.

24. WMATA violated such duties by its application of WMATA's Policy P/I 7.40/0 in the Settlement Agreement and with respect to Plaintiff's Grievance.

25. WMATA violated such duties by not taking any action against Mr. Garland for his advice to Plaintiff in connection with the Settlement Agreement.

Dkt. 1-3 at 3–4 (Compl.). WMATA timely removed the action to this Court pursuant to the WMATA Compact, Pub. L. No. 89-774, 80 Stat. 1324, 1350 (1966) (codified at D.C. Code § 1-2431 (1981)). Dkt. 1.

Local 689 (but not WMATA) thereafter filed a motion to dismiss, Dkt. 3, which the Court granted in part and denied in part. *See Clark–Williams v. Local 689, Amalgamated Transit Union*, 37 F. Supp. 3d 361 (D.D.C. 2014) (Boasberg, J.). In that opinion, the Court dismissed the claims against Garland and held "as a matter of law that [Local 689] did not breach any duty in its representation" of Clark-Williams "in connection with the arbitration." *Id.* at 366–67. The parties then engaged in eight months of discovery, *see* Dkt. 8; Minute Order of Sept. 12, 2014, after which Clark-Williams sought leave to file an amended complaint, Dkt. 19. The Court denied Clark-Williams's motion to amend on the grounds that his proposed additions to his existing claims were "substanceless," that his proposed additional claims were untimely and futile, and that adding his proposed new defendant "would result in undue delay and prejudice" and "would also be futile." *Clark-Williams v. WMATA*, No. 14-cv-99 (RDM), 2016 WL 4186810, at *3, *4, *5–6 (D.D.C. Feb. 16, 2016) (Moss, J.). The Court subsequently set a summary judgment briefing schedule.

All three parties have now moved for summary judgment. WMATA and Local 689 both filed motions for summary judgment, Dkts. 30 & 31, as well as replies, Dkts. 34 & 35. Clark-Williams filed a single brief, which he designated as a combined cross-motion for summary judgment and opposition to both Defendants' motions, and which is less than five pages long. Dkt. 33 at 4–8. He waived his opportunity to reply. Dkt. 36.

## II.  LEGAL STANDARD

The moving party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if it can "show[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, the plaintiff bears the ultimate burden of proof, but the defendant has moved for summary judgment, the defendant

8

"bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it could affect the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court, moreover, must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

"Although summary judgment is not the occasion for the court to weigh credibility or evidence, . . . summary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal citations and quotation marks omitted). The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. That is, once the moving party carries its initial burden on summary judgment, the nonmoving party must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50.

### III. ANALYSIS

Clark-Williams's two claims are closely related. In one claim, he alleges that WMATA breached its collective bargaining agreement with Local 689 by, among other things, refusing to

reinstate Clark-Williams after he failed the background test.[2] Dkt. 1-3 at 4 (Compl. ¶¶ 24–25). In the other, he alleges that Local 689 breached its duty of fair representation in the course of the grievance and arbitration process. *Id.* at 3 (Compl. ¶¶ 16–19).

The Supreme Court addressed claims of this type in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983). *See also, e.g.*, *Malloy v. WMATA*, 187 F. Supp. 3d 34, 42 (D.D.C. 2016). *DelCostello* explains that, in the ordinary course, a union member who wants to sue his union or his employer must exhaust "any grievance or arbitration remedies provided in the collective bargaining agreement." 462 U.S. at 163. The employee is then typically "bound by the result according to the finality provisions of the agreement" and entitled to only "very limited" judicial review. *Id.* at 164. More complete review is available, however, "when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* Under those circumstances, the employee "may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.*

Claims of this type—which are known as a "hybrid § 301/fair representation claims"—thus involve two distinct causes of action: one against the employer for breach of contract under

---

[2] One paragraph of the complaint also refers to WMATA's duties to Clark-Williams under his "employment contract." *See* Dkt. 1-3 at 4 (Compl. ¶ 22). As far as the Court can tell, this is the only reference to that contract anywhere in the record. Clark-Williams certainly has not described what that contract entailed, and he has not alleged facts—much less offered any facts in his motion for summary judgment and opposition to Defendants' motion—supporting a claim for breach of the employment contract. To the extent that Clark-Williams's claim regarding his employment contract differs from his claim regarding the alleged breach of the CBA, the Court deems those allegations insufficient as a matter of law, *see* Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or, in the alternative, abandoned, *see, e.g.*, *Aragon v. Tillerson*, --- F. Supp. 3d ---, 2017 WL 721973, at *5 n.4 (D.D.C. Feb. 23, 2017).

§ 301 of the Labor Management Relations Act (codified at 29 U.S.C. § 185), and one against the union for breach of the duty of fair representation, which is implied under the National Labor Relations Act (codified at 29 U.S.C. §§ 151–169). *Id.* But "the two [causes of action] are inextricably interdependent." *Id.* at 164–65 (internal quotation mark omitted). "To prevail against either [defendant]," the employee "must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id.* at 165 (internal quotation marks omitted). In other words, the employee must prove *both* causes of action to prevail on either one. *Id.*

Because the Court concludes that Clark-Williams cannot succeed on the first of these prongs—that is, that WMATA breached the collective bargaining agreement—it need not reach the second prong. In particular, as explained below, Clark-Williams's hybrid claim fails because he has not produced evidence sufficient to create a triable issue of fact as to whether WMATA breached its collective bargaining agreement with Local 689. His complaint presents two theories of breach. First, it alleges that WMATA breached the CBA through "[the] application of [the Background Screening Policy] in the Settlement Agreement and with respect to [Clark-Williams's] [g]rievance." Dkt. 1-3 at 4 (Compl. ¶ 24). Second, it alleges WMATA breached the CBA by "not taking any action against . . . Garland for his [alleged, inaccurate] advice to [Clark-Williams] in connection with the Settlement Agreement." Dkt. 1-3 at 4 (Compl. ¶ 25). Neither theory survives summary judgment.

**A.     Whether WMATA's Application of the Background Screening Policy Constituted Breach of the CBA**

The first theory—*i.e.*, that WMATA breached the CBA by requiring Clark-Williams to undergo a background check as a condition of his reinstatement, determining that Clark-Williams failed that background check, and then failing to reinstate him as a result—is

11

foreclosed by the text of the CBA itself (or at least the portion of the text that the parties have provided). As WMATA points out, *see* Dkt. 31-1 at 4–5, and Clark-Williams does not meaningfully contest, *see* Dkt. 33 at 4–8, the CBA gives WMATA plenary control over "the hiring and establishment of standards for selection and qualification of employees," Dkt. 31-1 at 81. The relevant portion of the CBA provides:

> [Local 689] acknowledges that all matters pertaining to the management of operations, *including . . . the hiring and establishment of standards for selection and qualification of employees*, . . . are the prerogatives of [WMATA] and are reserved by [WMATA] unless expressly waived by specific provisions of this agreement, or by the past practices of the parties.

*Id.* (CBA § 102(b)) (emphasis added). Given that any "[i]nterpretation of a contract . . . must begin with the plain meaning of [its] language," *Am. Fed'n of Gov't Emps., Local 2924 v. Fed. Labor Relations Auth.*, 470 F.3d 375, 381 (D.C. Cir. 2006), WMATA has produced competent evidence that the application of the Background Screening Policy to Clark-Williams was "reserved exclusively for WMATA under the CBA," Dkt. 31-1 at 5, such that WMATA's manner of doing so cannot constitute breach.[3] The burden, accordingly, shifts to Clark-Williams to produce countervailing evidence, such as other "specific provisions" of the CBA that

---

[3] WMATA further argues that the Court must defer entirely to the Board's finding that WMATA did not violate the Settlement Agreement by not reinstating Clark-Williams. *See* Dkt. 31-1 at 5–6; Dkt. 35 at 2–3; *see also* Dkt. 30-2 at 19–20 (Board decision). But that finding does not speak directly to question at hand, which is whether failing to reinstate Clark-Williams constituted a breach *of the CBA*. And, in any event, total deference is inappropriate in the context of this hybrid § 301/fair representation claim. Because Clark-Williams must prove *both* aspects of the claim to prevail, the § 301 portion of his claim ultimately rests on the hypothesis that Local 689 breached its duty of fair representation in the arbitration proceeding. *DelCostello*, 462 U.S. at 164–65. Deferring to the arbitrator's decision in such a case would produce precisely the "unacceptable injustice" that the hybrid § 301/fair representation claims were created to avoid. *Id.*; *see also id.* at 164 ("[W]hen the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation . . . , an employee may bring suit against both the employer and the union, *notwithstanding the outcome or finality of the grievance or arbitration proceeding*.") (emphasis added).

"expressly waive" section 102(b), or evidence of "the past practices of the parties." Dkt. 31-1 at 81; *see Celotex*, 477 U.S. at 324.

But Clark-Williams's five-page cross-motion and opposition identifies no contrary evidence. *See* Dkt. 33 at 4–8. Instead, he points to a different section of the CBA—section 104(d)—which he says provides that no employee will be "discharged, suspended, or otherwise disciplined . . . without sufficient cause." *Id.* at 6. (No party has supplied the Court with section 104 of the CBA agreement, but the Court will assume that it contains such a provision.) As far as the Court can discern, Clark-Williams argues that WMATA breached section 104(d) by ignoring "Appendix D" to the Background Screening Policy, resulting in Clark-Williams's wrongful "discharge[]." Dkt. 33 at 6. And "Appendix D" does, in a vacuum, seem relevant: It is titled, "Review of Arrest & Conviction Records," and it provides that "[c]onviction(s) that were disclosed on the [employee's] original . . . application for employment . . . will be excluded from further review." Dkt. 34-2 at 13 (emphasis removed).

The problem with Clark-Williams's section 104(d) argument, however, is that Appendix D did not apply to employees in his circumstances. Under the Background Screening Policy's plain terms, "Appendix D" governed eligibility screenings of *internal* candidates, but not those of *external* ones. *Compare* Dkt. 34-2 at 8 (Policy § 5.02) (Procedures for Screening Internal Candidates) (providing that "[r]ecords of arrests and convictions discovered as a result of a screening will be reviewed in accordance with *Appendix D* to th[e] policy") *with id.* at 7–8 (Policy § 5.01) (Procedures for Screening External Candidates) (providing no similar assurance). The Background Screening Policy made clear, moreover, that it treated employees seeking "reinstatement," like Clark-Williams, as "external candidates." *See, e.g.*, Dkt. 34-2 at 2 (Staff Notice Regarding Policy) ("Employees reinstated pursuant to . . . a decision by management are

13

also considered external candidates."); *id.* at 3 (Policy § 2.01(a)(2)) (defining "[e]xternal [c]andidates" to include "[r]eturning represented employees who have been reinstated or are under consideration for reinstatement by management decision"); *id.* at 4 (Policy § 3.03(a)) ("For the purposes of this policy, returning employees who are under consideration for reinstatement are considered external candidates."); *see also* Dkt. 34-4 at 2 (Settlement Agreement) ("[*R*]*einstatement* will be contingent upon [Clark-Williams] meeting the standards set forth in [the Background Screening Policy].") (emphasis added). In other words, the Policy's plain terms required that Clark-Williams be treated as a new applicant for the position, rather than as an existing employee. So, under the Policy, WMATA was within its rights to consider Clark-Williams's prior criminal convictions afresh.

Because Clark-Williams has articulated no other grounds on which WMATA could be found to have breached the CBA through its application of the Background Screening Policy, and has failed to identify any genuine issue of material dispute, Defendants are entitled to summary judgment as to Clark-Williams's first theory of breach.

**B.      Whether WMATA's Failure to "Take Action" Against Garland Constituted Breach of the CBA**

Clark-Williams also fails to carry his summary judgment burden with respect to his second theory of alleged breach of the CBA—*i.e.*, that WMATA breached the CBA "by not taking any action against" Garland, the union employee who allegedly misled Clark-Williams. *See* Dkt. 1-3 at 4 (Compl. ¶ 25). What "action" WMATA could have taken against a union official for providing allegedly bad advice to a member of the union, and how any such "action" could have helped Clark-Williams, is left to the imagination. Although the Court has before it three different motions for summary judgment—including one filed by Clark-Williams—not one of those filings addresses this allegation in the complaint. *See generally* Dkt. 30 at 10–15; Dkt.

14

31-1 at 4–7; Dkt. 33 at 4–8; Dkt. 34 at 4–12; Dkt. 35 at 1–4; Dkt. 36 at 1–2. Because Clark-Williams was on sufficient notice of the need to put forward evidence to support this theory—and to provide some cogent explanation of the theory—yet he failed to do so, Defendants are entitled to summary judgment on the issue.

Although "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," *Celotex*, 477 U.S. at 323, when the nonmoving party will bear the ultimate burden of proof at trial, the moving party's initial burden of production is slight. It "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The Court itself may enter summary judgment *sua sponte*, moreover, "so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* at 326. Once the moving party makes this minimal, initial showing, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

WMATA satisfied its initial summary judgment burden by "pointing out" to the Court that "[Clark-Williams] cannot prove that there was any breach of contract by WMATA." Dkt. 31 at 1; *see also, e.g.*, Dkt. 31-1 at 6 (arguing that "Plaintiff cannot, as a matter of law, demonstrate any breach of the CBA by WMATA, and this fact alone compels dismissal of the entire case against both Defendants"). Although neither WMATA nor Local 689 specifically addressed Clark-Williams's allegation that WMATA breached the CBA by failing to take action

15

against Garland, both Defendants made clear that they were seeking summary judgment as to the entire action and that they took the position that Clark-Williams had failed to adduce evidence to support any aspect of the alleged breach of the CBA (or any other aspect of his claims). *See, e.g.*, Dkt. 30 at 5 ("There are no disputed material facts and the Defendants are clearly entitled to prevail as a matter of law."); Dkt. 31-1 at 4 ("Plaintiff cannot, as a matter of law, survive summary judgment as to the requisite element, on which he bears the burden of proof, of demonstrating breach of the collective bargaining agreement against WMATA."). Even more to the point, it is difficult to discern what else Defendants might meaningfully have done, given the paucity and implausibility of the allegation at issue; it certainly was not their responsibility to explain what Clark-Williams *might* have meant when he alleged that "WMATA violated [its duties under the CBA] by not taking any action against . . . Garland," Dkt. 1-3 at 4 (Compl. ¶ 25), in order to then rebut that single, obscure allegation. In any event, it is safe to conclude that Clark-Williams was "on notice of what [he] had to present in order to defeat [Defendants'] motion[s]." *Bush v. District of Columbia*, 595 F.3d 384, 387 (D.C. Cir. 2010).

       The burden thus falls on Clark-Williams to provide evidence of *some* material fact from which a factfinder could conclude that WMATA breached the CBA by failing to take action against Garland. Clark-Williams has not done so. Aspects of this claim that Clark-Williams has failed to support—or even to explain—include such critical components as (1) the portion of the CBA he contends required WMATA to take "action" against Garland, (2) how any such duty was triggered, (3) whether WMATA was aware of the advice that Garland provided to Clark-Williams at the relevant time, (4) what "action" WMATA was required to take, and (5) how any such "action" might have helped Clark-Williams. This "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial,"

*Celotex*, 477 U.S. at 323, so the Court will grant summary judgment in favor of Defendants as to whether WMATA breached the CBA on this theory.

\* \* \*

Defendants have therefore demonstrated that no genuine question of material fact exists as to whether WMATA breached the CBA and, thus, WMATA is entitled to judgment as a matter of law. And, because Clark-Williams must prove that WMATA breached the CBA in order to prevail on his hybrid § 301/fair representation claim, *see DelCostello*, 462 U.S. at 165, Local 689 is entitled to judgment as a matter of law on Clark-Williams's breach of duty of fair representation claim as well. As a result, it is not necessary for the Court to address the separate question whether Local 689's "conduct toward" Clark-Williams was "arbitrary, discriminatory, or in bad faith." *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Both defendants are entitled to judgment.

## CONCLUSION

The Court will grant Defendants' motions for summary judgment (Dkts. 30 & 31), will deny Clark-Williams's cross-motion for summary judgment (Dkt. 33), and will enter judgment for Defendants.

A separate order will issue

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 25, 2017